12959, Randall Mechanical, Inc. v. the Secretary of Labor. Mr. Tilton. Good morning, Your Honors. May it please the Court, my name is Anthony Tilton and I have the pleasure of representing the petitioner, Randall Mechanical, Inc. Thank you very much in advance for your time. Your Honors, the issue presented before you today involves the Administrative Law Judge in the trial court's conflicting application of an interpretation of Occupational Safety and Health Review Commission, which was placed over the precedent of the Supreme Court and Pioneer in this court's controlling precedent in Coniglio and Cheney with regard to an excusable neglect analysis under Rule 60B. We don't have any, our unpublished decisions are not precedential. Are you referring to Coniglio, Your Honor? Then we will look to that only for persuasion. You don't want to rely on that. Well, that's persuasion. You want to use the argument. Yes, Your Honor. We'll lean on Cheney then, which is a very similar analysis. What we believe that we have here is an abuse of discretion by the lower court. We're asking the 11th to remand this back to the lower court. The abuse of discretion occurred when the trial court overturned its original order, which granted Rule 60B relief by applying the Pioneer factors, the four factors based on an equitable analysis. Yet later, after a notice or rather an instruction from the Occupational Safety and Health Review Commission to apply not 11th Circuit case law, but to apply its A.W. Ross Incorporated, a case from 2000, applying its own commission precedent over that of the 11th Circuit. You think and the ALJ apparently thought that the only difference between the two purported standards is the weight given to the fault of the party that's seeking to take advantage of excusable neglect? Yes, Your Honor. In support of that, what I would say is if we look first at the first order, the ALJ weighs all the factors, actually cites two Pioneer, the equitable analysis, and says that prejudice is the primary importance, but looks at all of them, and then following that we've got a second order after this notice from the Review Commission in which it seems as though the ALJ has abandoned the other three Pioneer factors and sort of made an exclusive decision based on reason for delay. Your Honor, it's our position that that is not what was intended by the court in Pioneer. Sir, Your Honor, we have also cases that indicate that attorney error when a lawyer misinterprets a rule, for example, is not excusable neglect. How do you get those cases to sort of harmonize with your position? Yes, Your Honor. So first, I think what is very telling, and when we're talking about attorney mistake, I will look to Cheney, which was a counsel mistake in which they granted Rule 60B relief, as well as Pioneer. It was counsel's mistake. In this particular matter, Your Honor, we have a pro se litigant interpreting an enforcement action by the Occupational Safety and Health Administration. So, I guess, trying to respond to your question, Your Honor, what Pioneer said is that the movement itself can be negligent. The movement can have been careless and yet can still be provided relief. I think that's how I would respond to your inquiry. No, but we have a case called Riney or Rainey, for example, from 1997, which says, it holds as follows. This is a quote, guided by the decision in Pioneer and decisions in this circuit, we hold that as a matter of law, a lawyer's failure to understand clear law cannot constitute excusable neglect, end quote. So, how do you put that together with the other cases that you cite, for example, Cheney, which allow a finding of excusable neglect? So, and I'm not, I think that the analysis, and I'm not terribly familiar with the Rainey case in front of me, Your Honor, but I would assume that the court there applied the four factors on an equitable basis from a totality of the circumstances using Pioneer, and in that particular case decided, no, it's not excusable neglect. And I think that's what's central to this issue is that, be it Rainey or Cheney or the persuasive. Counselor, you would move for relief under 60B-6 as well. I did, Your Honor. You sure did. And that's, and the ALJ, in effect, said it wasn't applicable, and yet he didn't make any showing, and in my view, there was showing under 6. I would agree. That's a weighing of the equities provision. I would agree with you, Your Honor, and I think one of the issues that were brought up in our request for relief under B-3 and B-6, there were a number of factual issues. Well, forget B-3. B-6 is the catch-all, the equity provision of the rule. Well, my understanding of Pioneer— And you weigh prejudice to the non-moving, and you weigh prejudice that the moving suffers. As well as the length of delay, reason, and— And the other things, the way in which OSHA inspectors dealt with Randall's people when they met. Well, Your Honor, that's my position, is that the improper silence created— Well, I understand. That's part of the weighing of the equities. Yes, Your Honor, and I think when looking at Pioneer, it's— Pioneer is a 60B-1 case. Yes, Your Honor. Period. Yes, Your Honor. It doesn't speak to 6, does it? No, Your Honor, but it speaks to excusable neglect. Well, I understand that. And I think excusable neglect is a part of the analysis within each one of the 60B elements. It's swallowed up in 60B-6, and I speak for myself. Yes, Your Honor. The excusable neglect is part of the 60B-6 analysis. I believe that the analysis in Pioneer was looking at— I believe it was a 60— I'm sorry, Your Honor, I can't exactly recall if it was 60B-1, 3, or 6 in Pioneer. I just know that they provided us with the definition of excusable neglect. They actually went into great detail to look at Webster's definition of neglect, and I think this is really key as to where A.W. Ross in 2000 misses the ball. A.W. Ross seems to make a single dispositive exclusive factor reason for delay. It's almost as if it's predetermined. The ALJ will look and see if there is reason for delay. If there is a good reason for delay, only then can the analysis start. That's the way A.W. Ross seems to frame itself, and that's not what Pioneer said. Pioneer said to weigh all relevant factors and make a decision based on equity under a totality of the circumstances. A.W. Ross—I guess I call it a threshold analysis. A.W. Ross appears to create a threshold analysis. Either you have a good excuse or you don't. If you have a good excuse, only then will we proceed, and that's not what Pioneer said. It's certainly not what this court said in Cheney or in the persuasive discussion in Coniglio. If your client had—even acting pro se—had waited four more months before taking any action, what would the result be? So, Your Honor, I think it would be taken on a case-by-case analysis. I think the ALJ would look and— That's the case. The case is four more months. So I will step into the shoes of the ALJ here, and I'll ask myself, did they find out— looking at World Wide Web, for example, which was relied on by the secretary, did they know they were late and didn't do anything about it? The answer in my hypothetical is yes. At some point, if they wait four months, they're going to get the citation telling them, you haven't done anything about it, you're hereby fined X amount of dollars. I agree, Your Honor. In this case, there are facts. They continued to call OSHA saying, hey, what happened with that discussion back on the 25th? We offered you $1,500. Are we going to resolve it? Silence. Those sort of items are the totality of the circumstances which come into this pioneer analysis as to whether or not to grant excusable neglect. So in your analysis, Your Honor, I think that the ALJ would have to ask, when did they find out that they were behind? I think of particular note, they hired an attorney in this matter, who the second this thing came across his desk, I think it was September 18. I noticed the contest was filed on September 18. So had they waited, had they wanted to talk about it for another four months, I think Judge Gatto in the lower court would not have found excusable neglect. And that speaks sort of to what the secretary and the commission stand on, which is, hey, if we grant excusable neglect here, no one ever has to follow the 15-day deadline, and that's not true. You have to examine all the factors, which the court did in its first go-around, examined all the factors, applied pioneer and applied Cheney, and said that there was excusable neglect. When told by A.W. Ross to ignore the rest of those factors, they ruled against Randall. Thank you, Your Honor. All right. Thank you very much. Is it Tryon? Tryon, yes. It's Tryon. Appreciate it. May it please the court, I'm Amy Tryon on behalf of the Secretary of Labor. Randall Mechanical filed a notice of contest 56 days late, and the only reason they gave for doing so was essentially that they didn't understand how and when they were required to file, even though the citation they had received contained the required procedures in bold and underlined type. I take your argument, and I'm sympathetic to it, with this big caveat. The ALJ took all that into account and said, if I apply federal law, I am allowing excusable neglect. Then when he gets the sort of suggestion from the agency, reconsiders and says, okay, the agency is telling me to do something different, and if I apply a slightly different standard, different result. That puts you in a bind, I think. It puts you in another bind. Sure. Let's assume you were in the district court. Yes. And you lost in the district court, first ALJ order. You lost in the district court. You took an appeal, and you lost. Yes. Could you go back before the district judge and move under Rule 60B for reconsideration of the order? The answer is no, isn't it? No, no, Your Honor. No, the answer is no, is it not? Yes, correct. The answer is no. All right. So the ALJ issues a decision, a final decision, and the government appeals. Yes. And they lose. Correct. For whatever ground. So now you have a final decision down there before the ALJ, and you want it reconsidered? You want the second bite of the apple. I agree, Your Honor, that that wouldn't work. But the difference here has to do with the structure of the commission and the commission ALJs. The ALJs decisions are subject to review by the commission, a discretionary review by the commission. If the commission chooses not to review them, here ---- I'll give you something else to think about. Yes. Are you familiar with Atlantic Marine? I might need to be reminded. Well, it was cited in the ALJ's first order. Yes. Okay. Atlantic Marine is a Fifth Circuit case that is binding on this court. Yes. All right. Now, in Atlantic Marine, the same thing happened, except the employer did not move under 60B. The employer simply appealed to the commission the denial of relief. Yes. And then we received it, the Fifth Circuit did, from the commission. We weren't looking through the lens of 60B. Yes. And reversed. Yes. Let's suppose in this case that Randall, instead of moving for 60B relief, simply appeals to the commission the dismissal. Yes. Okay. And now we receive it from the commission. All right? We wouldn't be bound by Rule 60B considerations, would we? Well. What I'm suggesting is that you can have two results on the same set of facts. The only difference is whether or not there was a 60B motion filed as opposed to a straight appeal. Well, but it's an abusive discretion review either way, Your Honor. I realize that. Yeah. Well, in Atlantic Marine, we weighed the equities. I mean, I think that this is all about weighing the equities. And I want to address Randall's contention that the commission case law somehow impermissibly differs from Pioneer and from this circuit's case law. That is not true. Admittedly, it was a little unusual that the commission issued this notice. It was because the secretary had filed a petition for interlocutory review after the ALJ's initial decision, and the commission said, well, this doesn't meet the legal standard for interlocutory review, but we're issuing this notice reminding the ALJ that commission case law is to that the reason for the delay is a key factor, not the key factor, a key factor. And Randall has cited cases from this court that describe Pioneer as placing primary importance on the prejudice factor. But Pioneer itself, as well as every single one of this circuit's excusable neglect cases, at least all the ones that I've read, they make clear that it's an equitable determination requiring consideration of all the relevant factors. And while we certainly agree that the reason factor cannot always be dispositive, that's sort of what Pioneer was all about, reviewing mixed circuit precedent, some of which said as long as the reason for the delay is within the control of the move-in, then there's no excusable neglect. And Pioneer said, no, you need to consider these other things, too. If there's a conflict between the standards set by the commission and the standards set by Eleventh Circuit law, which controls? Eleventh Circuit, for cases within the Eleventh Circuit. But I would like to point to some case law showing that, some Eleventh Circuit case law, showing that here the reason for the delay, which the ALJ found, was so inadequate that relief for excusable neglect was not appropriate. The second time around? The second time around, yes. The first time around he thought it was enough to allow relief. That's right. That's where I think your problem is, because whether you're ultimately right, if you're looking at this de novo, and you might be right that Eleventh Circuit law and commission law are reconcilable, harmonious, and not conflicting. Yes. The ALJ did not understand that to be the case. Because if not, he would not have flipped. He thought the commission was telling him to do something different. Whether that was a correct understanding or not, he changed because of the commission's telegraph. Like, hey, key factor underlined is the party's behavior. Because when he was applying straight federal law the first time around, whether rightly or wrongly, he found that there was enough to allow an excusable neglect tardy filing. He did the first time, but I guess I'm not sure I see how that matters, Your Honor, because after the commission noticed there was a motion for reconsideration by the secretary, OSHA filed a motion for reconsideration. Well, let's suppose that's out of order. Let's suppose that that appeal was over with, and this is a final judgment, and the ALJ says, I am not going to reconsider a final judgment. You already took it upstairs, and he got nothing. It's a final judgment. I'm going to stand on it. Then you would be appealing, wouldn't you? That's right, Your Honor. Okay. And what would the standard of review be? The standard would be as to the legal questions, abuse of discretion, or arbitrary and capricious. Whether the ALJ abused his discretion in granting the relief. Right. And in that case, we might, if that were the posture. How would you argue that case? In that posture, we would argue that under 11th Circuit precedent, including the Riney case that Your Honor mentioned, and there's also another one that is unpublished, but in Ray Bailey 521 Federal Appendix 920, applies that same rule about misunderstanding in the plain language of the filing rule, where the party says it applies to a pro se party as well. But they don't put it on the road to go, though, wouldn't you? Well, certainly, because we would be the appellant. Yes, the appellant also always has the right of personal appeal. That all turns on under what rules of the commission were you entitled to seek reconsideration of a final order entered after an appeal is dismissed? Well, the commission has authority to make its own rules, but applies the federal rules of civil procedure. Well, you already agreed that you couldn't do that. You couldn't move a district judge to reconsider after we dismissed an appeal. Well, maybe I would amend that to say not that you couldn't move, but that there would be no reason for granting it. Well, you could move, and the district judge wouldn't pay any attention to it. Well, not. When I was a district judge, I wouldn't have paid attention. Well, I admit that's not my specialty, the district judges. The relationship between the ALJs and the commission is such that. Well, then under what rule does the commission seek a reconsideration following an appeal that they lost? Well, I think. You must have a rule. Due process would require a rule. Agreed. Okay. Whatever rule of civil procedure it is that allows motions for reconsideration at all. Do you know it at all? I do not know what number of the rule. Whatever rule that is is what applies to that. You're assuming there's a rule. I am assuming there's a rule because people file motions for reconsideration. That may well be. They do a lot of things without the basis for it. Well, I'm embarrassed that my grasp of the federal rules of civil procedure is not thorough. After an appeal is over with and it's a final judgment, basically. What rule does the commission have? I disagree with your Honor's characterization of it as a final judgment. The ALJ's initial order was denying the secretary's motion to dismiss the notice of contest and granting Randall's motion for 6dB relief. Now, maybe the answer to Judge Choflat's question is this, that the commission's ruling on interlocutory review was not a ruling on the merits and therefore left everything still going. What was the basis for the commission's decision on interlocutory review? The commission rule on interlocutory review has raised a novel question of law about which— You committed a procedural default. Well, they disagreed, too. Well, that's what the commission said. The commission said we didn't meet that standard of novel question of law, and there was a dissent which said that the judge disagreed. But, yes, that was what the commission held, that we didn't meet that stringent standard, but then they issued this somewhat unconventional notice. Okay, so now here's a question about commission law. Sure. If the secretary is unable to convince the commission on any given issue, on interlocutory review, does the secretary get to raise that same issue after final judgment if it loses on the merits, or is that some sort of estoppel, law of the case, res judicata? I think that's what Judge Choflat is asking. I think— In other words, are you stuck with what happened on interlocutory review? I think the answer to that is if the commission denies the petition for interlocutory review, then, no, there's no estoppel. We're not stuck. If they grant the petition for interlocutory review but deny whatever it was that we were appealing about, then that would be a law of the case kind of situation. Because the standard for interlocutory review is the strict standard about a novel— sorry, I can't remember the exact words, but it's something like a novel issue of law about which reasonable jurists could disagree. It's something along those lines. There's no right, obviously, to an interlocutory appeal. But in this case, when the secretary went back and moved for reconsideration and the ALJ granted it, that became the decision that is now up for review by this court. What had changed between the first time and the second time? Nothing had changed, right? Factually, nothing had changed. Except the commission's little note of interlocutory review. I think that this is equivalent to if the commission had— if the interlocutory appeal had never happened, but the counsel for the secretary had filed a motion for reconsideration and said, wait a second, under these commission cases, your honor misapplied, the ALJ, your honor misapplied because you didn't give enough weight to the factor in these circumstances, not in every circumstance, but under these circumstances, the factor should have been dispositive. The ALJ thought about it again and said, you know, on reconsideration, I have reconsidered. You're right. I think that's the equivalent posture that we have here. I'd like, if I could, just to address a couple of the things brought up during Mr. Tolton's time. Randall suggested as entitled to relief under Rule 60b-3 for deception by the secretary. The ALJ found that no such deception took place. There's substantial evidence in the record supporting that in the form of the OSHA official provided sworn declaration testimony that she reminded Randall of the deadline twice, both in a meeting the day before the deadline and in a phone call the day of the deadline. If we were to remand this case back, would the ALJ have to resolve the question of whether or not the company was told that the deadline was expiring? Was reminded that the deadline was expiring? No, not at all, Your Honor, because as the ALJ found and the commission reminded them and is undisputed, the citation, the original citation, which the company gets in the mail and says – I'm talking about the oral reminder. I don't see how that matters, but I think – it doesn't matter – You don't think it would matter if the ALJ made a credibility determination that they were told that day orally that the deadline expires today? No, I'm sorry. Yes, of course that would bolster the finding the ALJ already made that there was no deception. My point is that the findings the ALJ has already made preclude granting relief under 60b-3. And as for 60b-6, this court has found that that as a catch-all provision is mutually exclusive with other 60b provisions, and you can't apply it unless the relief sought – unless a party's claim couldn't be considered under the other 60b provisions. And that's not the case here. The ALJ thought that Randall had not provided sufficient information, justification, argument to trigger 60b-6, right? That's right, which would have – I don't think the ALJ mentioned the mutually exclusive point, but this court has held it many times, and you'd have to offer extraordinary circumstances something different. Here, the question is whether this is excusable neglect or not, or whether there was deception or not, and there's no evidence of any extraordinary circumstances that would be separate from that that would somehow permit the application of 60b-6.  Thank you. Mr. Filton, you've got your rebuttal time. Your Honors, just very briefly, I want to touch on one item that the justices spoke to the department about. We had an original order from the administrative law judge which applied the Supreme Court of the United States precedent and performed a four-pronged pioneer analysis. Nothing changed after that. The facts remained the same. The declarations from Randall Mechanical were the same. The declarations from Casey Kramer, the assistant area director, were the same. There was no testimony. There were no documents. Nothing changed. What happened is the commission placed the ALJ on notice, or rather instructed the ALJ to follow not the Eleventh Circuit's controlling case law, but to apply their case law. And this is incredibly telling because it created an automatic change, and it sort of speaks to our position that A.W. Ross is flawed because it is placing so much emphasis on key factor that it's creating exclusivity. It's creating it as a dispositive factor which all of a sudden ignores the other three. I don't know what weight the ALJ gave to all four prongs, and I certainly couldn't begin to do the hypothetical mathematical analysis, but the weight that he applied to the key factor after being told to do so by A.W. Ross and the commission must be incredibly disproportionate. He weighed all factors, made an equitable decision on the merits, and ruled in favor of relief. Nothing changed. No new facts. And the ALJ completely changed his decision based on this one key factor, and we believe, Your Honors, that that's the flaw in A.W. Ross. We believe that A.W. Ross is in direct contrast to what was handed down in Pioneer and Cheney and then the persuasive discussion in Coniglio, and we thank you for your time, Your Honors. All right. Thank you both very much. We're in recess until tomorrow morning. All rise.